**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

TAMMY W., et al.,

                              Plaintiffs,

v.                                     CIVIL ACTION NO.  2:09-cv-01170

PATSY A. HARDY,

                              Defendant.

**MEMORANDUM ORDER & OPINION**

In this action for injunctive and declaratory relief the plaintiff, Tammy W., on behalf of her minor daughter, T.W. and a class similarly situated individuals, challenges the administration of the West Virginia Children with Disabilities Community Services Program (CDCSP).  Pending before the court is the defendant's Motion to Dismiss the Complaint [Docket 6]. For the reasons explained below, the motion is **GRANTED**.  This case is **DISMISSED without prejudice**.

I.       **Background**

Tammy W. brings this action for injunctive and declaratory relief on behalf of her minor child, T.W., and on behalf of a class of individuals similarly situated.  (Compl. ¶ 6 [Docket 1].) T.W. suffers from mild hydrocephalus, encephalocele, and scoliosis, among other impairments.  (*Id.* at ¶ 21.)  In 1995, T.W. was found eligible for benefits under 42 U.S.C. § 1396a(e)(3) (the Medicaid Act), which regulates state plans for medical assistance.  (*Id.* at ¶ 22.)

The West Virginia Department of Health and Human Resources (DHHR) is responsible for administering the West Virginia CDCSP, which is a program authorized by the Medicaid Act that

allows eligible disabled children to receive medical care at home as an alternative to institutionalization.  The proposed class consists of all applicants and recipients of CDCSP benefits in West Virginia.  (*Id.* ¶ 6.)  The defendant, Patsy A. Hardy, is the Secretary of the West Virginia DHHR and is responsible for administering the CDCSP.

On April 5, 2009, Tammy W. received a letter from DHHR stating that T.W.'s CDCSP benefits would be terminated, because "[r]eview of documentation submitted does not support the need for services ordinarily provided in a nursing facility."  (Mot. Dismiss Compl. [Docket 6], Ex. 4.)  Tammy W. states that this letter provided no further explanation about why T.W no longer qualified for eligibility.  Tammy W. believes that the statement above "is the reason given for the majority of termination[s] in a wide range [of] categories, regardless of the circumstances." (Compl. ¶ 24(c).)

Upon receiving notice that T.W.'s benefits would be terminated, Tammy W. timely filed a request for a fair hearing as instructed in the notice letter.  (Mem. Supp. Mot. Dismiss Compl., 8.) Tammy W.'s attorney was provided a free copy of the documents DHHR submitted for admission into evidence at the hearing.  (*Id.*)  He has been informed that Tammy W. may submit evidence, call witnesses, and cross-examine the State's witnesses at the administrative hearing. (Reply Resp. Opp'n [Docket 9] 6.)  A hearing to determine T.W.'s eligibility was promptly scheduled, but that hearing has been repeatedly postponed because this action was filed prior to the date of the administrative hearing.  (*Id.*)  T.W. continues to receive benefits pending her scheduled fair hearing before DHHR.  (*Id.*)

In the Complaint, Tammy W. asserts that the CDCSP fails to comply with the Medicaid Act. She states that to qualify for CDCSP benefits an individual must demonstrate, among other things,

that he or she requires the level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally or developmentally handicapped.  (Compl. ¶ 15 (citing 42 U.S.C. § 1396a(e)(3)).)  According to Tammy W., the defendant "employs a standard more stringent than is provided under federal law," by requiring CDCSP applicants or recipients to show that they require the level of care provided in a *skilled* nursing facility.  (*Id.* at ¶¶ 18-19.)  This, she maintains, violates T.W.'s due process rights and federal law by depriving T.W. of her property interest in the continued receipt of CDCSP benefits.  Tammy W. also contends that DHHR's process of providing termination notification violates federal law and the Due Process Clause of the Fourteenth Amendment of the federal Constitution.

The plaintiffs seek a declaration that the application of CDCSP eligibility standards is excessively stringent and inconsistent with federal law, and that the notice of an adverse decision by DHHR is inadequate, resulting in a violation of the plaintiffs' due process rights.  Additionally, the plaintiffs request that the court enjoin the defendant from terminating CDCSP benefits until the defendant's policies comply with federal law.  The plaintiffs further request that the court enjoin the defendant from failing to provide applicants and recipients of CDCSP benefits adequate, meaningful notice of any adverse action.

On November 18, 2009, the defendant filed the Motion to Dismiss the Complaint.  DHHR argues that the state CDCSP is consistent with the Medicaid Act, its implementing regulations, and the State Medicaid Manual.   Further, DHHR maintains that Medicaid claimants do not have a constitutionally protected property interest in CDCSP benefits.  Lastly, DHHR claims that its notice of denial or termination of benefits is constitutionally sufficient.

## II.     Motion to Dismiss Standard

The defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Procedure 12(b)(6).  A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading.  *Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, _ U.S. _, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Additionally, this court has *sua sponte* considered the ripeness of the action.  Ripeness implicates this court's jurisdiction to hear the plaintiffs' claims.  Therefore, the court will consider the defendant's motion in light of Federal Rule of Civil Procedure 12(b)(1).  *See* 5B CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004) (stating that because "the federal courts are of limited jurisdiction and only can adjudicate those cases that fall within Article III of the Constitution, . . . [c]ourts have recognized a variety of other defenses that one normally would not think of as raising subject matter jurisdiction questions . . . including the action is not ripe for judicial adjudication.").

## III.     Discussion

Federal courts derive their jurisdictional power to hear cases and controversies from Article III of the Federal Constitution.  The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, n.18 (1993).  The presumption of Article III jurisdiction is subject to an implicit limitation: "injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise

in the context of a controversy 'ripe' for judicial resolution." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967).

"Even when a ripeness question in a particular case is prudential, [a court] may raise it on [its] own motion, and cannot be bound by the wishes of the parties." *Catholic Soc. Servs., Inc.*, 509 U.S. at 57, n. 18 (internal citations omitted).  Ripeness is a justiciability doctrine designed

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Labs.*, 387 U.S. at 148-49.  "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d. 312, 318 (4th Cir. 2006).

In making the assessment of whether a case is ripe, a court must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (citing *Abbott Labs.*, 387 U.S. at 149).

> A case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings.  The hardship prong is measured by the immediacy of the threat and the burden imposed on the petitioner.

*Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d. 203, 208 (4th Cir. 1992) (citing *Abbott Labs.*, 387 U.S. at 149, 153).

This case is not ripe under the two-prong *Abbott Laboratories* test.  The court therefore lacks jurisdiction to hear this dispute.  Judicial decision would be inappropriate in this case for three

reasons.  First, the agency action giving rise to this controversy is not final.  As it stands, T.W.'s benefits have not been terminated.  A possibility exists that T.W. may be deemed eligible for continued receipt of CDCSP benefits at her fair hearing, thus mooting her claims.  Her claims rest entirely upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-581 (1985).

Second, delayed review would not cause hardship to T.W. because she continues to be provided CDCSP benefits pending administrative determination of her eligibility.  Third, judicial intervention at this stage would interfere with DHHR's authority to determine T.W.'s eligibility for CDCSP benefits.  Although Medicaid is governed by federal statute, state governments are responsible for its administration.  *McGhee v. Dir., Dep't of Mental Health and Hygiene*, No. 97-2588, 1998 WL 403329, *3 (4th Cir. 1998) (unpublished table decision).  Thus, "basic notions of federalism and comity counsel that the state system should first make a final determination" as to T.W.'s CDCSP eligibility before this federal court intervenes.  *Id.*  Dismissing this case will provide DHHR with an opportunity to make a final eligibility determination in T.W.'s case and "help preserve the states' important role in administering the program." *Id.*

Based upon the two *Abbott Laboratories* factors, this court has determined that T.W.'s claims are not ripe. T.W. is still receiving CDCSP benefits, and may possibly be deemed eligible for continued receipt of those benefits.  Interference with DHHR administration of the Medicaid Act would be improper at this time.

## IV.    Conclusion

The court **GRANTS** the defendant's Motion to Dismiss the Complaint [Docket 6] **without**

**prejudice**.  The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.   The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:        February 4, 2010

Joseph R. Goodwin, Chief Judge